Daniel Wayne VERRETT, Appellant,

v.

The STATE of Texas, Appellee.

No. 09 82 023 CR.

Court of Appeals of Texas,
Beaumont.

Dec. 8, 1982.

Joe Alford, Orange, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

DIES, Chief Justice.

This is an appeal from a conviction for burglary of a habitation. Punishment was assessed at seven years in the Texas Department of Corrections.

Appellant challenges the sufficiency of the evidence to connect him with the commission of the crime. Appellant also opposed the admission into evidence, at the sentencing stage of the proceeding, of a 1978 deferred adjudication order for the burglary of a building.

■■■■ *Vernon's Ann.C.C.P., Art. 38.14* requires corroborating evidence which tends to connect a defendant with the offense in order to support a conviction based upon accomplice testimony. To test the sufficiency of the corroborating testimony, non-accomplice testimony must be examined to ascertain if there is inculpatory evidence which tends to link the accused with the commission of the offense: If there is such evidence, corroboration is sufficient; otherwise, it is not. *Meyer v. State,* 626 S.W.2d 778, 780 (Tex.Cr.App.1982); *Eckert v. State,* 623 S.W.2d 359, 361 (Tex.Cr.App.1981). An accomplice witness need not be corroborated in all of his testimony, and the corroboration need not directly link the accused to a crime or be sufficient in itself to establish guilt. *Meyer v. State,* supra at 780; *Eckert v. State,* supra at 361; *Walker v. State,* 615 S.W.2d 728, 732 (Tex.Cr.App.1981). The corroborating testimony only has to make the accomplice's testimony more likely than not. *Meyer v. State,* supra at 780; *Eckert v. State,* supra at 361. In 1981, the Court of Criminal Appeals quoted *Minor v. State,* 108 Tex.Cr.R. 1, 299 S.W. 422 (1927): *

"Circumstances proved by credible witnesses may be as potent as direct testimony in tending to connect the accused with the commission of the offense. The State

is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration. It is the combined and cumulative weight of the evidence furnished by non-accomplice witnesses which supply the test. If by this rule it appears on appeal that *before the jury there was proof confirming the testimony of the accomplice to material facts tending to connect the accused with the commission of the offense, the law is satisfied."* (Emphasis added.)

Carl Dupuis was an accomplice witness. Carl testified that on January 23, 1981, about 6:30 P.M. he visited Donald Hodgson and appellant at Hodgson's home. The three men drove to Nederland in Dupuis' 1977 brown Chevrolet truck, which had Chevrolet written across the tailgate in white. While on Nederland Avenue, the three discussed burglarizing some homes. They drove around the neighborhood of the scene of the crime. About 9:00 P.M. to 10:00 P.M., Carl pulled up to a house near the scene of the crime; appellant knocked at the door to verify that the house was vacant, and a man answered the door. The group then proceeded to Avenue K, to a home identified by Dupuis as the scene of the crime. Dupuis and Hodgson went to the back of the home, leaving appellant as driver, and tried unsuccessfully to pry their way inside with a tire tool. Thereupon, Dupuis and Hodgson returned to the truck, with Dupuis switching places with appellant as driver of the vehicle, to give appellant a crack at the illegal entry. Dupuis was apprehended while driving his truck around the block. Detective Rufus Williams testified that during Dupuis' confession, he informed the Nederland police of appellant's involvement in the burglary.

Ted Killough testified that on January 23, 1981, between 9:00 P.M. and 10:00 P.M., he and his wife were watching television. From the home's exterior, the house would have appeared unlit and quiet. Appellant knocked at the witness's door asking if

---

* In *Walker v. State,* supra at 731–732.

"Wessenbecker, or a name similar to this . . ." lived there. The witness replied, "No," and appellant "was kind of nervous and backed away and said he was sorry to have disturbed me. There was either a pickup or a van parked outside my driveway." Killough testified that he had gotten a good look at appellant and that the vehicle in question seemed to be gray, but he was "not sure whether it was or not." The following Monday, Killough identified appellant from a photographic spread at the police station; he also identified appellant in court.

Beverly Wolfe testified that on January 23, 1981, at approximately 10:15 P.M., she and her husband noticed a truck which kept passing and stopping in front of their house. She described the truck as a brown Chevrolet, with Chevrolet written across the tailgate in white letters. Mr. Wolfe went outside and instructed Mrs. Wolfe to call the police. After she had summoned the police, Mrs. Wolfe joined her husband whereupon the Wolfes went to the back of their lot to observe the crime scene. She noticed a flashlight in the house, and then two white males exiting the home who remained standing outside for a few minutes. Mrs. Wolfe's viewing distance of these men was not stated precisely in her testimony. The men ran when a neighbor came to the scene and told them that the police wanted to talk with them. Mrs. Wolfe gave an in-court identification of appellant as one of the men she saw emerging from the burglarized premises on the night in question. But, on cross examination, she testified that she could not swear that appellant was absolutely one of the men who came out of the house. The testimony reads: "I couldn't positively identify the face. All I know is the structure, the outline of the person."

Detective Rufus Williams testified that Mr. Killough identified appellant, without hesitation, from a photographic spread. Mrs. Wolfe had chosen appellant's picture from the photographic spread too, but she could not swear that he was the perpetrator.

Merely being in the accomplice's company shortly before or after the crime is insufficient corroboration to support a conviction. *Meyers v. State,* supra at 780. Rather, the proper analysis is a multifactor approach: The presence of an accused in an accomplice's company is a circumstance to be considered in the sufficiency of the evidence to corroborate accomplice testimony; suspicious conduct of a defendant, such as flight after a crime is committed, may furnish sufficient corroboration of accomplice testimony to warrant a conviction. *Passmore v. State,* 617 S.W.2d 682, 684–685 (Tex.Cr.App.1981); see also, *Bird v. State,* 423 S.W.2d 919, 922 (Tex.Cr.App.1968). When dealing with "sufficiency of the evidence to support accomplice testimony" contentions, each case must be considered on its own facts. *Etheredge v. State,* 542 S.W.2d 148, 150 (Tex.Cr.App.1976). We believe that the record is replete with evidence to uphold appellant's conviction. Killough's testimony connects appellant with Dupuis and places him in the vicinity, shortly before the commission of the crime. In addition, Mrs. Wolfe's identifying appellant and witnessing his flight from the crime scene supply some evidence tending to connect appellant with the offense. For the aforementioned reasons, this ground of error is overruled. We hold the corroborating evidence is sufficient to support appellant's conviction pursuant to *V.A.C.C.P., Art. 38.-14.*

Appellant's second ground of error is novel, so far as our case law is concerned. Appellant claims that his 1978 deferred adjudication order was inadmissible during the punishment assessment phase of trial. The trial court denied appellant's second motion in limine, which requested that the court prohibit any reference to defendant's having been placed on unadjudicated probation. Appellant urges that the trial court erred in its action because the probation in question is a void order and, therefore, cannot be used as evidence. Appellant cites to us *Ex parte Olvera,* 489 S.W.2d 586 (Tex.Cr.App.1973), and *Ex parte Flores,* 537 S.W.2d 458 (Tex.Cr.App.1976), cases based on void

convictions, not orders of unadjudicated probation. Appellant claims that the order in question is void because "first, [the court] had no authority to modify a deferred adjudication; and second, could not assess punishment without a finding of guilt." Therefore, since it was the modified order that appellant was serving under and not the original order appellant argues, the "State cannot avoid the illegality of the modified order by substituting the original order."

The record reflects that on June 5, 1978, appellant was granted deferred adjudication and placed on probation for two years after being tried for burglary of a building. On April 2, 1979, the State filed a motion to revoke probation, and, on April 18, 1979, the court modified its deferred adjudication order by imposing an additional $1,000 fine and thirty days imprisonment in the county jail. The State introduced the original unmodified order at trial.

Appellant cites no case law which directly supports his assertions. The appellant was not harmed by the court's decision to modify its original order instead of adjudicating guilt—in fact, appellant was helped by the judge's benevolent action. Also, we believe that the modified order was valid under *V.A.C.C.P., Art. 42.12, Sec. 6,* which reads: "The court having jurisdiction of the case shall determine the terms and conditions of probation and *may,* at any time during the period of probation *alter* or *modify the conditions....* Terms and conditions of probation may include, but *shall not be limited to* [list provided]." (Emphasis added.) In addition, *Sec. 6b(a)* specifically authorizes the court to impose a thirty day imprisonment sentence as a condition of probation. Thus, the modified order was valid, and the State was not avoiding admission into evidence of an illegal order by admission of the original deferred adjudication order.

*Sec. 3d(c)* of *Art. 42.12* allows "upon conviction of a subsequent offense, the fact that the defendant had previously received probation [to] be admissible before the court or jury to be considered on the issue of penalty." We believe that the State's admission into evidence of appellant's 1978

deferred adjudication order complied with this statute.

For the aforementioned reasons, we overrule appellant's second ground of error.

The judgment is affirmed.