**Michael Robert GAYNOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–89–270–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

March 15, 1990.

Rehearing Denied March 22, 1990.

Discretionary Review Refused June 27, 1990.

Randy Schaffer, Houston, for appellant.

Winston E. Cochran, Jr., Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Michael Robert Gaynor, appeals his judgment of conviction for the offense of aggravated robbery TEX.PENAL CODE ANN. § 29.03 (Vernon 1989). The jury rejected appellant's not guilty plea and assessed punishment at ten years confinement in the Texas Department of Corrections. We affirm.

Appellant assigns five points of error on appeal. In his first point of error, appellant submits the judgment of guilt is against the great weight and preponderance of the evidence. In his second point of error, appellant argues that defense counsel's failure to argue significant exculpatory evidence during summation denied appellant the effective assistance of coun-

sel and a fair trial. In his third point of error, appellant contends the trial court reversibly erred in permitting a detective to testify that investigators were going to show the photo spread containing appellant's photo to witnesses in other cases. In his fourth point of error, appellant contends the trial court committed reversible error in admitting evidence at the punishment stage that appellant had previously received a deferred adjudication probation for aggravated sexual assault of a child. In his fifth point of error, appellant submits the trial court reversibly erred in admitting a cash bail bond reflecting that appellant's father posted ten thousand dollars cash to bond appellant out of jail for the offense of aggravated sexual assault of a child.

On November 20, 1987, at 1:00 a.m., Rosendo Gonzales was working as the cashier of a Circle K store on Tully Street in Houston, Texas. A man entered the Circle K, jumped over the counter, made Gonzales open the cash register and safe and took about $70.00 to $80.00. The robber held a handgun to Gonzales' head and threatened to kill him if Gonzales called the police within thirty minutes. After the man left the store, Gonzales called the police. When the police arrived, Gonzales described the man as a white male, 5′5″, 130 pounds, with wavy, shoulder-length hair and glasses, wearing a gray-black jacket, blue jeans and tennis shoes.

Officer Steven Ash obtained this description and went to interview Janet Marksberry, the clerk on duty at the Tenneco station located about one-half mile from the Circle K. Ash gave Marksberry the description of the robber and she replied that a man fitting that description and wearing a brown jacket, purple sweatshirt and blue jeans, without glasses, had entered the Tenneco station and bought a pack of cigarettes only ten minutes before Ash had arrived. Further, Marksberry stated that the same man had been in the Tenneco store several times before. The next time appellant came into the Tenneco station, Marksberry obtained the license number of his truck and gave it to the police.

Sergeant Luigi Angeli, a thirteen year veteran with the Houston police department, traced the license number to a truck belonging to appellant's father's company. Angeli then obtained appellant's name and photo and presented a photo spread to Gonzales who, in December of 1987, made a positive identification of appellant. In March of 1988, Marksberry also identified appellant's photo as the man who had been at the station on the evening in question. At trial both Gonzales and Marksberry identified appellant as the man encountered by them on November 20, 1987.

Appellant's first point of error contends that this court should reverse the conviction because the jury's guilty verdict, and the judgment rendered thereon, were against the great weight and preponderance of the evidence. We note that appellant has structured his entire argument under this point of error in terms of a standard of review that is inapplicable. We refer appellant to the very recent Court of Criminal Appeals' case, *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App.1990). In *Meraz*, the Court of Criminal Appeals re-affirms that the standard of review denominated as "against the great weight and preponderance of the evidence" is generally restricted to affirmative defenses where the burden is upon the defendant to prove his affirmative defense by a preponderance of the evidence plus any other factual determination where the defendant bears the burden of proof. *Meraz* further holds that review of the facts relevant to an affirmative defense and review of sufficiency of the evidence to support a conviction are entirely separate matters and are mutually exclusive. In the instant case, appellant presented no affirmative defenses. Accordingly, the proper standard of review in the case before us is that of *Jackson v. Virginia*, 443 U.S. 307; 99 S.Ct. 2781; 61 L.Ed.2d 560 (1979), that is, when confronted with a challenge to the sufficiency of the evidence, an appellate court must determine whether, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Under the *Jackson*

standard, the reviewing court is not to position itself as a thirteenth juror in assessing the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). Further, the appellate courts ensure only the rationality of the fact finder, serving as a final due process safeguard. *Moreno v. State*, 755 S.W.2d at 867. The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given their testimony. *Esquivel v. State*, 506 S.W.2d 613, 616 (Tex.Crim.App.1974). It is not our place to second guess the determination made by the trier of fact.

With this standard of review in mind, we turn to the instant case. Gonzales and Marksberry made positive pre-trial identifications of appellant as the man who had entered their respective businesses on the day in question. In addition, both Gonzales and Marksberry made positive identifications of appellant at trial. While it is true that appellant's father and sister testified appellant was at home with them at the time the robbery occurred, the jury chose not to believe their testimony. Neither was the jury convinced by appellant's testimony. A jury is entitled to accept one version of the facts and reject another or to accept ot reject any part of a witness' testimony. *Penagraph v. State*, 623 S.W.2d 341 (Tex.Crim.App.1981). Viewing the evidence in the light most favorable to the verdict, it is clear that a rational trier of fact could have found beyond a reasonable doubt that appellant was the robber of the Circle K on the evening of November 20, 1987. Appellant's point of error is overruled.

The second point of error contends that appellant's trial counsel failed to provide effective assistance of counsel. The standard for determining whether trial counsel provided adequate assistance is a two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), summarized in *Ingham v. State*, 679 S.W.2d 503, 509 (Tex.Crim.App.1984) as follows:

To paraphrase, the defendant must first show that counsel's performance was deficient, i.e., that his assistance was not "reasonably effective." Second, and assuming the defendant has first shown ineffective assistance, the defendant must affirmatively show prejudice. That is, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Although *Strickland* was concerned only with effective assistance pursuant to U.S. CONST. amend. VI, its test was adopted for Texas constitutional purposes in *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim.App.1986).

Appellant contends that his trial counsel's argument failed to point out discrepancies between the description of the suspect and the appellant. The record reveals that trial counsel certainly did address discrepancies:

"Shoulder-length wavy hair, with glasses doesn't describe my client, doesn't describe Mike Gaynor"

The record further reveals that trial counsel characterized Gonzales as being confused and emphasized that the demeanor of the individual observed by Marksberry was inconsistent with the commission of a robbery a few minutes earlier.

Appellant also finds fault with his trial counsel's argument which described Marksberry as being "A very truthful, nice lady ..." Yet appellant has apparently ignored the fact that trial counsel further argued that the *reason* Marksberry recalled appellant was simply because she knew him and that "... because he happened to be the last person she saw who fit the description before the police officer came by."

In evaluating trial counsel's effectiveness, we consider what the trial counsel did correctly in addition to what he arguably did incorrectly. During the trial itself, the record reflects numerous objections, some of which were sustained and some of which were overruled but preserved appellate issues. Appellant's trial counsel presented adequate alibi witnesses in a

case where identification of the assailant was critical. We hold that appellant's complaints against trial counsel's performance have failed to satisfy either prong of the *Strickland* standard. Appellant's second point of error is overruled.

■ In his third point of error appellant contends the trial court reversibly erred in permitting a detective to testify that investigators were going to show the photo spread containing appellant's photo to witnesses in other cases. The record reveals that Sergeant Luigi Angeli, the thirteen year police detective provided the prosecutor with an unresponsive answer suggesting that appellant was investigated as to other cases. This occurred during the following exchange:

THE STATE: Did you give the photo spread in this case to my investigator?

A: My understanding was that they were going to show it to some other witnesses in this case and maybe other cases.

THE STATE: I'm sorry?

A: In this case and maybe other cases.

THE DEFENSE: Your Honor—

THE STATE: I'll pass the witness.

THE DEFENSE: Your Honor, I would object to the last comment regarding any other cases, which might have planted any seed in the eyes of the jury [Ouch!] that my client may or may not be charged with any other crime, which he has not been. I ask that the jury be instructed to disregard that voluntary statement.

THE COURT: Ladies and gentlemen of the jury, with regard to what the officer just testified to, with regard to any other cases, I personally don't know what he means by that. It could mean any cases of anybody's. I have no idea. But you're to disregard that bit of his testimony.

THE DEFENSE: Move for a mistrial, Your Honor, based on his voluntary statement.

THE COURT: That will be denied.

In the first instance, we note that the Court instructed the jury to disregard the complained of testimony. An instruction to

disregard cures error unless the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing its impression on the jury. *Crawford v. State*, 603 S.W.2d 874, 876 (Tex.Crim.App. 1980).

Investigator Milton Ojeman, the District Attorney's investigator assigned to this case, testified that, in March of 1988, the prosecutor requested him to obtain the photo array previously prepared and shown by Sergeant Angeli to Gonzales in December of 1987. Ojeman actually spoke with Angeli and picked up Angeli's photo array. Pursuant to the prosecutor's request, Ojeman then took Angeli's photo array to the residence of Marksberry who made a positive identification of appellant.

■ In light of the trial court's curative instruction and also Investigator Ojeman's subsequent testimony where he specifically referred to "this case," upon review of the entire record, we find beyond a reasonable doubt that Sergeant Angeli's unresponsive answer did not contribute to appellant's conviction or punishment. TEX.R.APP.P. 81(b)(2).

■ In his fourth point of error, appellant contends that the trial court erred at the punishment stage of the trial by admitting evidence that appellant previously had received probation pursuant to deferred adjudication for the offense of aggravated sexual assault of a child. Appellant successfully completed that deferred adjudication probation. Over appellant's objection, the State was allowed to admit an order showing that appellant had entered a plea of guilty to the offense of aggravated sexual assault of a child in 1986. The prosecutor then referred to appellant's prior probation as evidence that probation was insufficient to rehabilitate the appellant.

Appellant relies on TEX.CODE CRIM.PROC. ANN. art. 37.07, § 3(a) (Vernon 1981) which reads in relevant part:

"Sec. 3. Evidence of prior criminal record in all criminal cases after a finding of guilt.

(a) Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

Appellant's deferred adjudication, in our judgment, is a not a conviction for the obvious reason that there was and remains no finding of guilt. Nonetheless, the Court of Criminal Appeals has indicated that probation pursuant to a deferred adjudication is admissible at the punishment stage in a subsequent trial. See *Brown v. State,* 716 S.W.2d 939 (Tex.Crim.App.1986) where the Court upheld the admission of a probation pursuant to deferred adjudication which had not been terminated. In addition, *Brown* cited with approval *Verrett v. State,* 646 S.W.2d 448 (Tex.App.—Beaumont 1983, pet. ref'd), 648 S.W.2d 712 (Tex. Crim.App.1982), which held that a completed probation pursuant to a deferred adjudication was admissible at the punishment stage in a subsequent trial. In view of the holding in *Brown,* we are compelled to overrule appellant's fourth point of error. We feel, however, that the Court of Criminal Appeals may wish to re-assess its holding in *Brown* which is in conflict with art. 37.07, § 3(a) of TEX.CODE CRIM.PROC.ANN. Appellant's fourth point of error is overruled.

■ Appellant's fifth point of error contends that the trial court erred at the punishment stage of trial in admitting a cash bail bond reflecting that appellant's father posted $10,000 cash to bond appellant out of jail for the offense of aggravated sexual assault of a child. The State was required to prove that appellant was the same Michael Robert Gaynor who had received the prior deferred adjudication probation. A Harris County deputy obtained appellant's fingerprints in court. Those fingerprints were compared to a fingerprint appearing on the bond document which was State's

Exhibit Four. We find the bond document was probative to establish the appellant's identity as the person who had received the prior deferred adjudication probation and that fingerprint comparison was a legitimate way of so doing.

Appellant further argues that this evidence of the prior adjudication was fuel for the prosecutor's arguments that appellant committed the charged offense "despite the warm, loving family that he had" and despite the fact that the appellant "has had all the advantages in life of a wonderful family ...." We note that the prosecutor did not make specific reference to the prior bond. The same argument could reasonably have been construed as referring to the guilt-innocence stage testimony which showed that appellant's family was motivated out of concern for appellant to obtain professional treatment for his emotional problems. We find that the trial court committed no error in admitting the cash bail bond. Appellant's fifth point of error is overruled.

Accordingly, we affirm the judgment of the trial court.