Curtis Edward BROWN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. C14–89–0711–CR, B14–89–0712–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 24, 1991.

Rehearing Denied Feb. 14, 1991.

Discretionary Reviews Refused May 15, 1991.

Tony Aninao, Houston, for appellant.

Alan Curry, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

CANNON, Justice.

In cause no. 524,277, appellant entered a plea of not guilty before the court to the offense of theft. TEX.PENAL CODE ANN. § 31.03(a). In cause no. 524,278, appellant entered a plea of not guilty before the court to the offense of burglary. TEX.PENAL CODE ANN. § 30.02(a)(1). He was convicted of both offenses by a jury. The court assessed punishment for each offense, enhanced under TEX.PENAL CODE ANN. § 12.42(d), at imprisonment for thirty years. The sentences were ordered to be served concurrently. We affirm in part and reverse and render in part.

On March 3, 1989, Francisco Bernal was working the 7:00 p.m. to 6:00 a.m. shift as a security guard for Marshall Investigation and Security. Bernal was driving the company patrol car sometime after midnight, when he received a dispatch to go to the complainant's garage at 1109 Holman. The complainant operated a business which repaired foreign cars. This was the second call that night to the garage. Bernal was familiar with the area and arrived at the garage within six or seven minutes. After his arrival, Bernal noticed that someone had opened the sliding gate to the sheet metal fence which provided access to a portion of the premises. The manager normally locked the gate and turned on the alarm system. Bernal notified the dispatcher of a forced entry and shortly after the police arrived, he radioed the dispatcher to notify the complainant. A short time later, the complainant arrived and the police asked him to check if anything was missing. At that time, the complainant determined that his B.M.W. was missing.

Houston Police Officer William J. Trapani was on patrol during the early morning of March 3, 1989, and was one of three H.P.D. officers who responded to the call regarding the burglar alarm at the complainant's garage. When he arrived, he noticed that someone had "jarred open" the sheet metal fence that "cornered off" approximately half of the building. He also observed that someone had cut the lock on the fence gate and pulled away the gate from the rest of the fencing material. Officer Ronald A. Rodriguez arrived while Officer Trapani was investigating the burglary. Officer Rodriguez "entered the building" through the point of forced entry in front of the building with both Officer Trapani and the complainant. At that time, they observed that someone had taken a radio from another car.

Officer Frank Donaldson was also on patrol during the early morning of March 3, 1989. Officer Donaldson received a call sometime after midnight regarding the burglar alarm at the complainant's garage. Officer Donaldson had responded to calls at the complainant's garage in the past and knew that the complainant repaired German automobiles. While en route to the complainant's garage, Officer Donaldson noticed a B.M.W. and suspected that it might be involved with the call. Using the computer in his patrol car, Officer Donaldson ran a check of the car's license plate number which revealed that it was registered to someone in another neighborhood.

After following the car for a short distance, Officer Donaldson observed appellant, the driver of the car, pull over and park beside a vacant lot. Appellant got out of the car and walked across the street leaving the car window down. According to Officer Donaldson, this was a strange location to leave a car because of the vacant lot and the many abandoned houses. Officer Donaldson pulled alongside appellant and asked him whose car he was driving. When appellant stated the car belonged to "Robert," Officer Donaldson asked appellant for his driver's license or proof of identification. When appellant was unable to produce any identification, Officer Donaldson asked appellant to sit in the back seat of his patrol car. Officer Donaldson then walked over to the B.M.W. at which time he noticed a large generator in the back seat and another car's radio in the front seat. Officer Donaldson radioed Officer Trapani, who transported the complainant to the location where the B.M.W. was stopped, some eleven or twelve blocks away from the complainant's garage.

When the complainant arrived, he identified his car and noticed the generator and the car radio inside. A check of the glove compartment by the officers revealed papers confirming the car belonged to the complainant. The complainant drove the car carrying the property back to his garage.

■ In his first two points of error, appellant complains the trial court committed error in overruling his motion for new trial without a hearing. Specifically, appellant contends he was entitled to a new trial because the jury committed misconduct by discussing appellant's failure to testify. As proof of jury misconduct, appellant attached a juror's affidavit to his motion for new trial. The affidavit stated in pertinent part:

Later on in the discussion, when it seemed like most of the jurors were getting impatient with my inability to see the case their way, the Foreman actually brought up a subject that wasn't even allowed to be discussed ... and that was the possible condition of [appellant] during the probable car theft and burglary. One of the jurors did stop him at that time. Although it was never spoken, right about this time is when I got the feeling that the fact that [appellant] did not defend himself, was definitely being used against him.

■ Appellant claims his motion for new trial and the attached affidavit established error as a matter of law because they proved the jurors discussed appellant's failure to testify and proved that this discussion affected the decision of one or more jurors. A motion for new trial which alleges jury misconduct on a matter outside the record must be supported by the affidavit of a juror or some other person who was in a position to know the facts. *McIntire v. State*, 698 S.W.2d 652, 658 (Tex.Crim.App. 1985). The purpose of the affidavit requirement is to limit the parameters of the hearing that is sought on the motion for new trial. *Id.* Hence, as a matter of pleading and as a prerequisite to obtaining a hearing, the affidavit must demonstrate that reasonable grounds exist for believing

that jury misconduct occurred. *Id.* Accordingly, we note and appellant concedes that if the juror's affidavit is insufficient, appellant is not entitled to a hearing on his motion for new trial.

■ The juror's affidavit in the instant case does not demonstrate reasonable grounds for believing that jury misconduct occurred because it is not competent evidence under the Texas Rules of Criminal Evidence. Rule 606(b) states:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify as to any matter relevant to the validity of the verdict or indictment. Nor may his affidavit or evidence of any statement by him concerning a matter about which he precluded from testifying be received for these purposes.

TEX.R.CRIM.EVID. 606(b).

In other words, jurors are incompetent to impeach their verdict by affidavit or testimony about their mental processes during deliberations but may testify as to any matter that is relevant to the validity of the verdict or indictment. *Hernandez v. State*, 774 S.W.2d 319, 324–25 (Tex.App.—Dallas 1989, pet. ref'd). A matter is relevant to the validity of the verdict or indictment if it concerns an overt act which constitutes jury misconduct under TEX.R.APP.P. 30(b) and its predecessor TEX.CODE CRIM.PROC. ANN. art. 40.03. *Id.*

While a jury's discussion of an accused's failure to testify would constitute an overt act of misconduct, the jury in this case never discussed that topic. The juror's affidavit states only her "feeling" that the jury was using appellant's failure to take the stand against him. In fact, the juror admits that subject was never actually discussed. Consequently, the affidavit fails to show that the jury's actions rose to an overt act of misconduct and fails to demon-

strate reasonable grounds for believing that jury misconduct occurred. Since the affidavit is insufficient, appellant was not entitled to a hearing on his motion for new trial. We overrule appellant's first and second points of error.

In his third point of error, appellant claims the evidence is insufficient to support both of his convictions.

If a defendant is found in possession of recently stolen property and at the time of the arrest fails to make a reasonable explanation showing his honest acquisition of the property, the factfinder may draw an inference of guilt. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex.Crim.App.1983). Once the permissible inference arises, sufficiency of the evidence must still be examined according to applicable evidentiary standards of appellate review since the inference is not conclusive. 656 S.W.2d at 77.

■ At the time of his arrest shortly after the police dispatch, appellant was driving the complainant's car some eleven or twelve blocks away from the complainant's garage. Inside the car was a another car's radio and a generator stolen from the complainant's premises. When he was asked who owned the car, appellant stated only that it belonged to "Robert" and made no effort to further explain his possession of the car or the other property. Since appellant's possession of the stolen property was personal, recent, and unexplained, we may infer appellant's guilt. *Williams v. State*, 766 S.W.2d 849, 851 (Tex.App.— Beaumont 1989, no pet.).

■ In reviewing the sufficiency of the evidence, the test is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime. *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989). A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every reasonable hypothesis except the guilt of the accused. *Carlsen v. State*, 654 S.W.2d 444, 447 (Tex.Crim.App.1983). Appellant contends his theft conviction cannot stand because there is insufficient evidence to show he intended to deprive the complainant of his car. Under the Penal Code, "deprive" means to dispose of property in a manner that makes recovery of the property by the owner unlikely. TEX. PENAL CODE ANN. § 31.01(3)(C) (Vernon 1989). Evidence of actual deprivation is evidence of intent to deprive. *Rowland v. State*, 744 S.W.2d 610, 612 (Tex.Crim.App. 1988).

The complainant testified that his 1974 B.M.W. Bavaria was customarily kept on the premises at 1109 Holman. He arrived at that location shortly after the security company notified him of the burglar alarm. Upon his arrival, the complainant noticed that his car was missing. At that time, the police had already determined there was a forced entry into the fenced area. The complainant testified that he did not give anyone consent to take his vehicle. When Officer Trapani and the complainant arrived at the location where Officer Donaldson had pulled over a vehicle driven by appellant, the complainant identified the vehicle as belonging to him. Officer Donaldson testified that appellant abandoned the vehicle when he parked beside a vacant lot and walked away leaving the car window down. Thus, the evidence is sufficient for a rational trier of fact to conclude that appellant intended to deprive the complainant of his car. Accordingly, we overrule appellant's third point of error as to the theft conviction.

■ In the same point of error, appellant contends that his burglary conviction cannot stand because there is insufficient evidence to show that he unlawfully entered the complainant's garage. Under the Penal Code definition of burglary, "enter" means to intrude any part of the body or any physical object connected with the body. TEX.PENAL CODE ANN. § 30.02(b) (Vernon 1989). The Penal Code also defines a "building" as any enclosed structure intended for use or occupation as a habitation for some purpose of trade, manufacture, ornament or use. TEX.PENAL CODE ANN. § 30.01(2) (Vernon 1989). A burglarious entry may be shown by circumstantial evidence. *Gilbertson v. State*, 563 S.W.2d 606, 608 (Tex.Crim.App.1978).

The complainant testified that the generator found in appellant's possession was usually kept inside the first mechanic stall next to the fence gate, but he admitted he had no personal knowledge of whether the car or generator was inside the garage at the time of the alleged burglary. The complainant also testified that the radio found in appellant's possession came from a car parked inside the fence. The parties and witnesses made reference in their testimony to the building *and* the fenced area. There was evidence of a forced entry, but only to the fenced area.

According to the complainant's testimony, there is an "open space" within the fenced area. The complainant also testified that the fenced area is not enclosed but is an "open area" which provides access to four mechanic stalls. Inside the fence were "cars, junk cars, and repair cars." In fact, the complainant noted that it was customary to leave vehicles "inside the parking lot in an open area but behind the fence." The complainant further testified that the fence gate is locked from the inside with a mechanical device and has a motion detector which activates an alarm when the gate is moved. The complainant stated that the manager was "very reliable" and "always" locked the building *and* the fenced area. There was no other evidence as to the character of the fenced area. Based on the evidence before the trial court, a reasonable trier of fact could not have found that the fenced area comprised part of an enclosed structure for purposes of burglary. *See Blankenship v. State*, 780 S.W.2d 198 (Tex.Crim.App.1989). Consequently, the property found in appellant's possession could have been taken from this area and not from inside the garage. Absent proof that the property found in appellant's possession came from inside the complainant's garage, and absent proof of forced entry into the garage itself, there is insufficient evidence to show that appellant entered an enclosed structure, and that he, therefore, was guilty of burglary. Accordingly, we sustain appellant's third point of error as to the burglary conviction.

In his fourth point of error, appellant contends, citing *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App.1990), that his conviction should be reversed because the jury's verdict is not supported by the great weight and preponderance of the evidence. This contention is without merit. In *Meraz*, the Court of Criminal Appeals held that the above standard is restricted to affirmative defenses or other fact issues where the defendant has the burden of proof by a preponderance of the evidence. 785 S.W.2d at 155. Whether there is sufficient evidence to support a conviction is an entirely different question involving a separate standard of review. *See Gaynor v. State*, 788 S.W.2d 95, 97 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Since appellant did not have the burden to prove a fact issue by a preponderance of the evidence, the *Meraz* standard is not applicable to this case. We overrule appellant's fourth point of error.

In his final point of error, appellant contends the trial court committed reversible error in overruling his motion for mistrial because the State attempted to shift the burden of proof during jury argument. Appellant's argument, however, focuses solely on the prosecutor's alleged comment on appellant's failure to testify. Appellant points to the following argument by the prosecutor:

> Prosecutor: It says that both on the second pages: "If you find from the evidence beyond a reasonable doubt." Those are crucial words that you need to think about because clearly the evidence—and only evidence that you heard which was uncontroverted by anything here in this courtroom yesterday—
>
> Defense Counsel: Objection to the word "uncontroverted." It puts the burden of proof on the defendant to either testify or call witnesses.
>
> The Court: Sustained.
>
> Defense Counsel: We request an instruction to the jury.
>
> The Court: Disregard the statement.
>
> Defense Counsel: Request a mistrial.
>
> The Court: Overruled.

**572**

A comment by the prosecution on the accused's failure to testify violates the 5th Amendment to the U.S. Constitution, Article I, Sec. 10 of the Texas Constitution and the express provisions of the Code of Criminal Procedure. Article 38.08 states:

> Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall be alluded to or commented on by counsel in the cause.

TEX.CODE CRIM.PROC.ANN. art. 38.08 (Vernon 1979).

In order to violate the right against self-incrimination and, therefore, Article 38.08, the offending language, when viewed from the jury's standpoint, must be manifestly intended or be of such character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Montoya v. State*, 744 S.W.2d 15, 35 (Tex.Crim.App. 1987), *cert. denied*, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). It is not sufficient that the language might be construed as an implied or indirect allusion to the defendant's failure to testify. *Id.* For an indirect comment to constitute reversible error, it must call for a denial of an assertion of fact or contradictory evidence that only the defendant is in a position to offer. *Livingston v. State*, 739 S.W.2d 311, 338 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

The prosecutor's remarks were made in the context of explaining the charge to the jury. When appellant objected, the prosecutor was explaining to the jury that they could base their verdict solely on the evidence from the witness stand and that such evidence was required to show appellant's guilt beyond a reasonable doubt. The prosecutor's remark about "uncontroverted" evidence referred to the evidence of the whole case and not necessarily to appellant's failure to testify. *See Banks v. State*, 643 S.W.2d 129, 135 (Tex.Crim.App. 1982), *cert. denied*, 464 U.S. 904, 104 S.Ct. 259, 78 L.Ed.2d 244 (1983).

Viewed in that context, we find that the language used by the prosecutor could reasonably have been construed by the jury as referring to appellant's failure to produce testimony or evidence from sources other than himself. *Livingston v. State*, 739 S.W.2d at 338. If the prosecutor's complained-of argument was error, such error was harmless. *Montoya v. State*, 744 S.W.2d at 40.; *Zeller v. State*, 728 S.W.2d 107, 109 (Tex.App.—Houston [14th Dist.] 1987, no pet.). Appellant's objection was sustained and the jury was instructed to disregard the comment. 728 S.W.2d at 109. Moreover, after the court overruled appellant's request for a mistrial the prosecutor urged the jury to follow the instruction regarding appellant's refusal to testify and also explained that instruction to the jury. Thus, the prosecutor's statements were in full recognition of appellant's right not to testify. We overrule appellant's fifth point of error.

Accordingly, we affirm the judgment of the trial court in cause no. 524,277. In cause no. 524,278, we reverse the judgment of the trial court and direct the trial court to enter a judgment of acquittal.