Lyndon Maurice RASBURY, Appellant,

v.

STATE of Texas, State.

No. 2–90–334–CR.

Court of Appeals of Texas,
Fort Worth.

June 3, 1992.

Mary B. Thornton, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Edward L. Wilkinson, John Harding, Debra Beesley, Assts. Fort Worth, for the State.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

FARRIS, Justice.

Lyndon Maurice Rasbury appeals his conviction for murder raising five points of error. Points one through four relate to alleged jury misconduct during the deliberations on guilt-innocence and in deliberations on punishment. Point fives raises ineffective assistance of counsel during both the trial and the punishment phase. We abate this appeal based upon a review of points one and three because we find that a new hearing is necessary on Rasbury's motion for new trial alleging that jury misconduct occurred at the guilt-innocence phase of trial.

The law as it applies to jury misconduct is the same for both the guilt-innocence and the punishment phases of the trial. However, the law is muddled and is the source of a great deal of confusion since the adoption of TEX.R.CRIM.EVID. 606(b). The rule states:

Upon an inquiry into the validity of a verdict or indictment, a juror may not

testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify as to any matter relevant to the validity of the verdict or indictment. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. Tex.R.Crim.Evid. 606(b). Commentators have suggested that the "except" language swallows the whole of the rule. *See* H. Wendorf, D. Schlueter & R. Barton, Texas Rules of Evidence Manual (3d ed. 1991); J. Ackerman, Texas Rules of Evidence (1991); *see also Shields v. State*, 809 S.W.2d 230, 233–34 n. 4 (Tex.Crim.App.1991) (rule difficult to apply due to clear internal contradiction between first and second parts). Some courts interpreting the rule held that a juror could not testify about his mental processes except where relevant to "overt acts" of jury misconduct, apparently in keeping with the pre-rule law. *See Goldstein v. State*, 803 S.W.2d 777, 798 (Tex. App.—Dallas 1991, pet. ref'd); *Hernandez v. State*, 774 S.W.2d 319, 324–25 (Tex. App.—Dallas 1989, pet. ref'd). In fact, the *Hernandez* court held with regard to an "overt act" that "a juror may testify to the fact that the impermissible conduct occurred, but may not testify to the actual content of the statement or statements constituting the impermissible conduct." *Hernandez*, 774 S.W.2d at 325. Thus, the test focused upon whether an overt act of jury misconduct had occurred. However, other courts ignored the "overt act" test and merely focused upon the language in the rule providing for testimony on "any matter relevant to the validity of the verdict." *See Brown v. State*, 804 S.W.2d 566, 569 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Reese v. State*, 772 S.W.2d 288, 291 (Tex.App.—Waco 1989, pet. ref'd). To make matters more confusing, a determination of "any matter relevant" could be made by reference to the permissible grounds for a new trial set forth in Tex. R.App.P. 30(b). *Hernandez*, 774 S.W.2d at 324–25.

Moreover, with regard to jury misconduct revolving around a discussion of parole law, a five-part test also evolved, which is also pre-rule. *See Sneed v. State*, 670 S.W.2d 262, 266 (Tex.Crim.App.1984). The five-part test is: (1) a misstatement of the law; (2) asserted as a fact; (3) by one professing to know the law; (4) which is relied upon by other jurors; (5) who for that reason changed their vote to a harsher punishment. *Id.*

Finally, most recently the Court of Criminal Appeals has attempted to clarify the confusion produced by Rule 606(b). *See Buentello v. State*, 826 S.W.2d 610 (Tex.Crim.App.1992). The *Buentello* court reversed the court of appeals' decision affirming the trial court's order overruling a motion for new trial based upon the jury's discussion of parole law at the punishment phase. The court found "no meaningful distinction under Rule 606(b) between acts of jury misconduct and 'overt acts' of jury misconduct" and held "the test for admission of juror testimony at a hearing on a motion for new trial is not whether the conduct constitutes an 'overt act,' but whether the matter sought to be elicited is deemed by the trial court to be relevant to the validity of the verdict." *Id.* at 614. What is "relevant" is to be determined on a case-by-case basis, considering the court's experience and observations, the grounds for new trial set forth in Tex.R.App.P. 30(b) and case law developed under the predecessor to Rule 30(b), Tex.Code Crim.Proc.Ann. art. 40.03 (Vernon 1979). *Id.* Moreover, the court approved of the continued use of the five-part *Sneed* test. *Id.* Thus, it appears that at least a portion of the *Hernandez* decision is overruled, that is, a juror may now testify to the content of the statement or statements constituting the impermissible conduct if the statement is relevant to the validity of the verdict. A continued look at Tex.R.App.P. 30(b) is still necessary, as well as the application of the *Sneed* test.

Rule 30(b) provides in pertinent parts for a new trial when: the verdict was decided by lot or in any other manner other than by a fair expression of opinion by the jurors; a juror has received a bribe or has been guilty of other corrupt conduct; after retiring the jury received other evidence; a juror conversed with another in regard to the case; a juror was intoxicated; or the court finds the jury has engaged in such misconduct that the accused has not received a fair and impartial trial. *See* TEX. R.APP.P. 30(b).

Rasbury's first and third points of error address juror misconduct which allegedly occurred when a juror who professed to know the law of self-defense misstated such law to one of the jurors who had been holding out for a not guilty verdict. We find no cases directly on point with this issue, but find the *Buentello* decision on juror misconduct concerning parole law instructive. A repetition of the testimony of juror Michael Ivey at the hearing on the motion for new trial is necessary for proper resolution of the issue before us.

BY MR. HERRIDGE [Defense Attorney]:

"Q. All right. After that particular ballot, did you have occasion to be advised by anyone on the jury panel with respect to the law of self-defense?

"A. Yes.

"Q. Could you tell the Court how that occurred, please, sir?

"THE COURT: Hold on just a minute.

(court at ease)

"THE COURT: All right. Go ahead and testify to that.

"THE WITNESS: Okay.

"A. Since it was—well, I had told everybody and everybody knew that I was the only one voting not guilty, so the conversation revolved around me. And there was a gentleman on the juror—jury who had told us about fairly extensive experience having to do with legal matters. He had been a JP or a magistrate before and the mayor of a small town and served on the Grand Jury. That's my memory. And so the conversation was primarily between he and I with the—several other jurors listening in.

"And it was my specific question to him that if—if—if we—we had no testimony, other than the Defendant's, himself, as to who shot first. The Defendant had been shot and the person who was killed had been shot. So, foremost was the question of who shot first, and we didn't have any testimony there, which was the definition of a reasonable doubt to me.

"So, this other juror that I'm talking about, I asked him specifically, well, he—he—let me back up just a minute. He was making the argument that because the Defendant had provoked the situation that he was therefore guilty of murder.

"MR. HARDING [Prosecutor]: Your Honor, again—

"THE COURT: I'll sustain the objection. Let's not get any farther. You're getting into matters that might have gone into your mental processes, and that's what we cannot allow in.

"THE WITNESS: Okay.

"MR. HERRIDGE: Okay.

"THE WITNESS: I—I felt like I had to give some background to why he said what I was going to—

"THE COURT: Well, we don't need to have that in. We don't want it on the record.

"THE WITNESS: Okay.

BY MR. HERRIDGE:

"Q. Go ahead.

"A. So, I specifically asked him, well then, is it the case that if the Defendant showed the weapon as he approached the truck, does that then take away his right to self-defense, if he was shot first that means he's still guilty of murder, was my question. And this juror answered, Yes. And—

"THE COURT: Okay. That's far enough. That's far enough.

"Go ahead and start again on your questioning.

"MR. HERRIDGE: All right.

BY MR. HERRIDGE:

"Q. Mr. Ivey, were you specifically told that Mr. Rasbury would be deprived of his right of self-defense, by reason of having a gun in his hand when he approached the Cagle vehicle?

"THE COURT: And I will instruct you not to answer that. Let's—and the reason—now, I'm putting this on the record so you'll know, as far as I'm concerned there obviously was some instruction as to what self-defense was in the charge, and so we don't need to go into these items that are covered by the charge.

"MR. HERRIDGE: I understand, Your Honor, but may I make—

"THE COURT: Now, I'll let you make a bill.

"MR. HERRIDGE: Yes, sir, I do want to make a bill.

"I—do you want me to—

"THE COURT: And for the purposes of the bill, you can go ahead and proceed at this point then, and it's—it's over the objection of the Court—I mean over the objection of the State, which has been sustained by the Court.

"MR. HERRIDGE: I understand, Your Honor.

"MR. HARDING: Your Honor, just for the sake of clarity, we are at this point now beginning to make a bill? Mr. Herridge will make his bill at this point?

"THE COURT: That's correct.

"MR. HARDING: Thank you, Your Honor.

"THE COURT: And then when you get to a point where you feel like you're through with the bill, let me know, and—

"MR. HERRIDGE: I will, Your Honor.
BY MR. HERRIDGE:

"Q. Were you told, Mr. Ivey, by this specific juror who professed to know the law that Mr. Rasbury would be deprived of his right to self-defense by reason of having had a gun in his hand when he approached the Cagle vehicle?

"A. Although those were not the specific words used, that was, in effect, what he was saying, yes.

"Q. And did you believe—

"MR. HERRIDGE: —I—I'm through with the bill, Your Honor.

"THE COURT: All right.
BY MR. HERRIDGE:

"Q. All right. Did you believe what the other juror told you as being a correct expression of the law?

"THE COURT: And I'll say that he's not to answer that based on the State's objection.

"MR. HERRIDGE: I will—I'd like to make a bill, Your Honor.
BY MR. HERRIDGE:

"Q. Do you recall my question, Mr. Ivey?

"A. Yes.

"The answer is yes.

"MR. HERRIDGE: I'm through with that part of the bill, Your Honor.

"THE COURT: Now, let me explain to you, Mr. Herridge, that what I'm saying is that the rule—in other words, I don't want to do it question by question.

"MR. HERRIDGE: Yes, Your Honor.

"THE COURT: In other words, I'm giving the State a running objection on the thing. I'm not going to carry this thing out question by question on it. If you're into subjective matters, and that's what we're talking about, also into matters that might have been ruled upon or—and matters that might have been covered by definitions in the charge, then let me make myself clear, those matters I'm sustaining the State's objection on. So, if—if you've got other matters like this, put them all in the bill and move along on it.

"MR. HERRIDGE: Okay. All right. I will do that then, Your Honor.

"THE COURT: Are we still in the bill?

"MR. HERRIDGE: Yes, sir.

"THE COURT: All right.
BY MR. HERRIDGE:

"Q. Do you recall the name of this specific juror?

"A. Maurice Oakes.

"Q. Okay. All right. Now, you had— up to the point in time that Mr. Oakes had

told you this, you had persistently voted not guilty; is that correct?

"A. Yes.

"Q. Based upon what Mr. Oakes told you and his understanding of what the law was, did you change your vote from not guilty to guilty?

"A. Yes.

"Q. Was that the only reason that you changed your vote from guilty—excuse me, not guilty to guilty?

"A. It was the controlling factor.

"Q. All right. Had you not been made this statement [sic], or had this juror not told you—

"MR. HARDING: Your Honor—

"THE COURT: This is on a bill. It's all on a bill.

"MR. HARDING: I'm sorry. I misunderstood.

"Go ahead, Mr. Herridge.

BY MR. HERRIDGE:

"Q. Had this juror not told you what the law was with respect to self-defense, would you have persisted in holding out for a not guilty verdict?

"A. I can only speculate, but that was my intention at the time.

"Q. So, again, based on what he said, you changed your vote from guilty—from not guilty to guilty?

"A. Correct.

"Q. And, again, did you believe what he told you to be the law?

"A. Yes.

"Q. And just so it's completely clear for the record, and I apologize for the repetition, he told you that Mr.—Mr. Rasbury could not have the benefit of the defense of self-defense if he had a gun in his hand; is that correct?

"A. In effect.

"Q. Generally, that's what he told you?

"A. Yes."

We must now determine whether Ivey's testimony, which was excluded by the trial judge, was "relevant to the validity of the verdict" and if admissible, would support a new trial and therefore, a finding of an abuse of the trial court's discretion in overruling Rasbury's motion for new trial.

▇▇▇▇ Although the *Sneed* test has only been applied in cases of jury misconduct involving parole law, we find it equally applicable in the present case concerning the alleged misconduct concerning the discussion of the law of self-defense. Moreover, the five prongs of *Sneed* have been met in this case as well. There can be no doubt that Juror Oakes misstated the law of self-defense when he told Juror Ivey that Rasbury lost his right to self-defense because he carried a weapon as he approached the victim's vehicle. Secondly, the record reflects Juror Oakes asserted this misstatement of the law as fact rather than as his opinion. Thirdly, Juror Oakes told Juror Ivey that he was a former "JP or a magistrate ... and served on the Grand Jury" which goes to Juror Oakes' professing to know the law. Fourth, Juror Ivey testified that he relied upon Juror Oakes' statement concerning the law of self-defense when he changed his vote from "not guilty" to "guilty." Lastly, Juror Ivey did in fact change his vote from "not guilty" to "guilty."

Looking to Rule 30(b), a new trial is required whenever a juror has received other evidence or engaged in such misconduct that the accused has not received a fair and impartial trial. We hold that the discussion of the law on self-defense between Jurors Ivey and Oakes, which was incorrect in its substance, was the receipt of "other evidence" and resulted in an unfair trial for Rasbury. Therefore, under the *Sneed* test and Rule 606, Juror Ivey's testimony concerning the conversation between him and Juror Oakes should have been admitted at the hearing on the motion for new trial as testimony "relevant to the validity of the verdict." *See Buentello*, 826 S.W.2d at 614.

Accordingly, this appeal is abated pending further action in the trial court in accordance with the following instructions:

1. The court shall set aside its previous order denying Rasbury's motion for new trial.

2. The court shall conduct another hearing on Rasbury's motion for new

trial within sixty days after the date of this order, and shall admit only evidence and affidavits from jurors relevant to whether the jury received other evidence concerning Rasbury's claim of self-defense during its deliberations on guilt-innocence.

3. The court shall then enter another order ruling on Rasbury's motion for new trial, supported by findings of fact and conclusions of law.

4. The court shall forward a statement of facts of the hearing and a supplemental transcript, containing any jurors' affidavits not heretofore filed, the order on Rasbury's motion for new trial and accompanying findings of fact and conclusions of law to the clerk of this court within thirty days after concluding the hearing.

*Reese*, 772 S.W.2d at 291.

Because we have abated Rasbury's appeal on points one and three, we need not address his other points at this time. Upon receipt by the Court of Appeals of a supplemental transcript and statement of facts evidencing the action of the trial court on abatement, the appeal of this cause shall be automatically reinstated without further order.