**Richard Cody BUENTELLO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1033–89.**

Court of Criminal Appeals of Texas,
En Banc.

March 4, 1992.

John E. Terry, Amarillo, for appellant.

Danny E. Hill, Dist. Atty., and Jon R. Waggoner, Asst. Dist. Atty., Amarillo, Robert Huttash, State's Atty., Austin, for State.

**OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW**

MALONEY, Judge.

Appellant was convicted by a jury of voluntary manslaughter and sentenced to twenty years confinement. The Court of Appeals affirmed appellant's conviction. *Buentello v. State,* 770 S.W.2d 917 (Tex. App.—Amarillo 1989). We granted appellant's petition to review the holding of the Court of Appeals that the jury's discussion

of parole was not so detrimental as to deprive appellant of a fair and impartial trial in violation of Tex.R.App.Pro. 30(b).

Appellant filed a motion for new trial with supporting affidavits from two jurors alleging jury misconduct and receipt of other evidence. At the hearing on the motion for new trial, two jurors testified as to discussions during the penalty stage of the trial regarding the applicability of early release on parole to appellant,[1] even though the court had instructed the jury in its charge that they were not to discuss how long the appellant would be required to serve on any sentence imposed. Appellant argued that the jurors' discussion of the application of parole law violated his right to a fair and impartial trial and constituted reversible error under *Sneed v. State*, 670 S.W.2d 262 (Tex.Cr.App.1984). The trial court denied the appellant's motion for a new trial.

The Court of Appeals addressed the applicability of Texas Rule of Criminal Evidence 606(b) in its disposition of appellant's points of error regarding the jurors' discussion of parole law. The Court of Appeals acknowledged that prior to the effective date of Rule 606(b), grounds for a new trial in felony cases were found in Article 40.03, V.A.C.C.P.[2] The court held that although that article was repealed by the adoption of the Texas Rules of Appellate Procedure, the substance of the article was carried forward in Rule 30(b) of the Rules of Appellate Procedure. *Buentello*, supra at 918. Viewed in this light, the court held that the "overt act" requirement of jury misconduct has been carried forward and that Rule 606(b) prohibits jurors from impeaching their verdict by affidavit or testimony regarding their mental processes during deliberations "except as relevant to an overt act of jury misconduct." *Id.* at 919. Thus, the Court of Appeals concluded that Rule 606(b) did not change Texas criminal practice. The court further held that

the "purpose of the 'except' clause of Texas Rule of Criminal Evidence 606(b) was to allow the use of juror testimony to determine a question of juror misconduct in the discussion of parole law." *Id.* The court applied the five-prong test set forth in *Sneed* and decided that the trial court did not abuse its discretion in overruling appellant's motion for new trial. *Id.* at 920. Both the State and appellant argue in their briefs that the disposition of this case is controlled by this Court's holding in *Sneed*.

In *Sneed*, this Court ruled that in order to show reversible error based on a discussion of parole by a jury, the defendant must prove the existence of the following factors:

1) a misstatement of the law;

2) asserted as a fact;

3) by one professing to know the law;

4) which is relied upon by other jurors;

5) who for that reason changed their vote to a harsher punishment.

*Sneed*, supra at 266. This Court held that the five-prong test applied to cases under either former Article 40.03 Subdivision 7, V.A.C.C.P., relating to receipt of "other evidence," or Article 40.03 Subdivision 8, V.A.C.C.P., relating to instances of "jury misconduct." *Id.*

Therefore, this Court is called upon to decide whether the adoption of Texas Rule of Criminal Evidence 606(b) changed the law with respect to testimony that would be permitted in order to impeach a jury's verdict, and whether the five-part test set forth in *Sneed* is still applicable under the new rule of evidence.

## I. DEVELOPMENT OF TEXAS RULE OF CRIMINAL EVIDENCE 606(b)

In 1981, the Texas Legislature created the Senate Interim Study Committee on Rules of Evidence in order to draft and recommend a judicially promulgated "inte-

---

1. Although the State did not object at the hearing that testimony from jurors regarding discussions occurring during the course of the jury's deliberations were inadmissible under Tex. R.Crim.Evid. 606(b), since the Court of Appeals addressed the applicability of Rule 606(b) in its

disposition of appellant's claim, we feel constrained to do the same.

2. Repealed by Texas Rules of Appellate Procedure effective September 1, 1986 (Acts 1985, 69th Leg., ch. 685, § 4).

grated" code of Texas rules of evidence. S.R. 565, 67th Leg., 1981. See generally, Caperton & McGee, "Background, Scope and Applicability of the Texas Rules of Evidence," 20 Hous.L.Rev. 49 (1983). During deliberations, the committee determined that a separate set of proposed rules would be required only for criminal matters.[3] Thereafter, the Senate–House Select Committee on the Judiciary approved legislation that would grant authority to the Texas Court of Criminal Appeals to adopt and promulgate rules of criminal evidence. Acts 1985, 69th Leg., Ch. 685, pp. 2472–73, §§ 1–4. The proposed draft of Rule 606(b) submitted by the Liaison Committee was worded in the current federal version of the rule. During deliberative proceedings under the auspices of the Select Committee, a subcommittee inserted the "except" clause and this clause was approved as written. This Court adopted the provision and provided for a broad, all-encompassing exception to the first portion of the rule, giving rise to the question by many authors in Texas as to why the preceding language in the rule was included at all.

## II. COMPARISON OF TEX. R.CRIM.EVID. 606(b) TO FED.R.EVID. 606(b)

■ Texas Rule of Criminal Evidence 606(b) states:

**Rule 606. Competency of Juror as a Witness**

**(b) Inquiry into validity of verdict or indictment**

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify as to any matter relevant to the validity of the verdict or*

*indictment.* Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. (emphasis added).

The Rule does not lend itself to easy application due to the clear internal contradiction between the first and second part of the rule. *Shields v. State,* 809 S.W.2d 230, 233–34, n. 4 (Tex.Cr.App.1991); *Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.1987) (Teague, J., dissenting). One author has stated: "[T]he exception is simple: Jurors may testify as to anything relevant to the validity of the verdict or indictment. Thus, Criminal Rule 606(b) places no independent limits on the ability of jurors to attack the validity of a verdict or indictment. They may testify as to any relevant matter." Goode, Wellborn, and Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal,* § 606.3 (1988). See also, Ray, 1 *Texas Law of Evidence Civil and Criminal,* §§ 395–96 (Texas Practice 3rd ed. Supp. 1991).

Texas Rule 606(b) is drafted contrary to its federal counterpart, which is grounded in the common-law rule against admission of jury testimony to impeach a verdict, except to testimony relating to extraneous information and outside influences. *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987).

Federal Rule 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influ-*

---

**3.** See *Public Hearings on the Proposed Texas Rules of Evidence,* June 29, 1982, at 1982 State Bar Convention (members of the Criminal Law Section of the State Bar voiced opposition to the application of the proposed rules to criminal proceedings), *reprinted in* Senate Interim Study on Rules of Evidence, 8th Transcript File, at 42–49.

*ence was improperly brought to bear upon any juror.* (emphasis added).

Federal Rule of Evidence 606(b), the Advisory Committee Notes,[4] as well as the Supreme Court's discussions in *Tanner,* make it clear that no inquiry is allowed into the jury's internal process of arriving at a verdict. A clearly drafted exception into the federal rule allows only an attack upon the verdict by juror testimony on the ground that prejudicial extraneous information was injected into the deliberation process (e.g., a radio newscast or newspaper account), or any outside influence was improperly brought to bear upon a juror (e.g., a bribe or threat to the safety of a juror). See generally, Mueller, *Juror's Impeachment of Verdicts or Indictments in Federal Court Under Rule 606(b),* 57 Neb.L.Rev. 920, 936–40 (1978). By insulating the jury decision-making process, and juror mental processes, Federal Rule 606(b) adopts the philosophy expressed in *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), that:

> "[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference." *McDonald,* 238 U.S. at 267–68, 35 S.Ct. at 784, 59 L.Ed. at 1302.

While Texas generally follows the Federal Rules of Evidence and the federal courts' interpretation of the same, see e.g., *Campbell v. State,* 718 S.W.2d 712, 716 (Tex.Cr.App.1986), this Court decided *not* to adopt the wording of the federal rule. The drafters determined that the federal rule and its interpretations were too nar-

row, and decided to reword the rule to allow for impeachment of the verdict through all relevant testimony as to both internal and external influences.

The plain language of the Texas rule indicates that jurors are not immune from testifying at a hearing on a motion for new trial. In fact, a juror may testify about "any matter," as long as it is "relevant to the validity of the verdict." "Any matter" is a broad, all-encompassing term, therefore, the trial judge is unquestionably granted more discretion under this rule to decide whether the testimony sought to be elicited at a hearing on a motion for new trial is relevant to the validity of the verdict. As long as the trial court operates within the boundaries of its discretion, an appellate court should not disturb its decision absent a clear abuse. See *Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Cr. App.1991) (opinion on rehearing).

The decisions of courts of appeals in this State that have had the opportunity to consider the application of Rule 606(b) are unclear as to whether only "overt acts" of jury misconduct will be examined through live testimony at a hearing on a motion for new trial, or whether the "except" clause consumes such a distinction and requires only that the testimony sought to be elicited is "relevant to the validity of the verdict."

In *Reese v. State,* 772 S.W.2d 288 (Tex. App.—Waco 1989, pet. ref'd), the Court of Appeals addressed the question of whether live testimony could be utilized under this new rule to show non-compliance with the admonition against consideration of early release on parole. The Court held that a jury that actually receives "other evidence" after it begins deliberations violates the defendant's constitutional right to confront and cross-examine the "witness" who gave

---

**4.** The Conference Committee Report reaffirms Congress' understanding of the differences between the House and Senate versions of Rule 606(b): "[T]he House bill allows a juror to testify about objective matters occurring during the jury deliberation, such as the misconduct of another juror or the reaching of a quotient verdict. The Senate bill does not permit juror testimony about any matter or statement occurring during the course of the jury's deliberations." H.R., Fed.Rules of Evidence, Conf.Rep. No. 93–1597, 93d Cong., 2d Sess. p. 8 (1974), U.S.Code Cong. & Admin.News 1974, p. 7102. The Conference Committee adopted, and Congress enacted, the Senate version of Rule 606(b).

the "other evidence" to the jury. *Id.* at 290, *citing Munroe v. State*, 637 S.W.2d 475, 482 (Tex.Cr.App.1982). The Court analogized parole discussions to the receipt of "other evidence." Therefore, the Court found that such testimony was admissible or else Rule 606(b) would run afoul of the defendant's constitutional protections. *Id.* The Court made no distinction as to whether the discussions constituted an "overt act" of jury misconduct as under prior caselaw, but merely concluded that the testimony was "relevant to the validity of the verdict" and was therefore admissible under the "except" clause to that rule. *Ibid.*

However, in *Hernandez v. State*, 774 S.W.2d 319 (Tex.App.—Dallas 1989, pet. ref'd), the Court determined that the "except" clause is meaningful only if it is read as a reference to Tex.R.App.P. 30(b) and the caselaw developed under its predecessor as to the grounds on which a new trial must be granted. *Id.* at 324–25. Therefore, the Court held that "under rule 606(b), jurors remain incompetent to impeach their verdict by affidavit or testimony about their mental processes during deliberations except where relevant to an *overt act* of jury misconduct," *Id.*, citing *Daniels v. State*, 600 S.W.2d 813, 816 (Tex. Cr.App.1980), and *Frias v. State*, 169 Tex. Crim. 549, 335 S.W.2d 765 (1960) (emphasis in original). The Court of Appeals went on to hold that discussion of parole law by jurors constitutes an overt act of misconduct, which is also relevant to the validity of the verdict, and is therefore admissible. *Hernandez*, supra at 325. See also, *Austin v. State*, 748 S.W.2d 546 (Tex.App.—Beaumont 1988, pet. ref'd). Judge Brookshire, in his dissenting opinion, argues that Rule 606(b) codifies Texas law and further states that the rule "preserves" the distinction between testimony concerning overt acts and testimony concerning mental processes. *Id.* at 553–55.

A distinction as to "overt acts" and mental processes of jurors regarding jury misconduct has never been clearly drawn. This Court finds that there is no meaningful distinction under Rule 606(b) between acts of jury misconduct and "overt acts" of jury misconduct.

We hold that the test for admission of juror testimony at a hearing on a motion for new trial is not whether the conduct constitutes an "overt act," but whether the matter sought to be elicited is deemed by the trial court to be relevant to the validity of the verdict. What is considered "relevant" will be determined on a case-by-case basis, taking into account the court's experiences and observations, the grounds for a new trial set forth in Tex.R.App.Pro. 30(b), and the caselaw which was developed under the predecessor to 30(b), Art. 40.03, V.A.C.C.P. Thus, the test adopted in *Sneed* is still a viable means of determining whether a jury's discussion of parole law constitutes reversible error.

## III. APPLICATION OF LAW TO FACTS OF CASE

A review of the testimony of jurors Montgomery and Dowd shows that the length of time appellant would serve in the penitentiary as a result of parole considerations was discussed by the jury and that jurors Norris and Gaines expressed their personal knowledge, experience, and opinion as to how long the appellant would have to serve in the penitentiary. Montgomery testified in pertinent part:

DEFENSE COUNSEL: Now, the people who discussed parole, did they, in any way, led [sic] you to believe they knew something about parole law?

MONTGOMERY: Yes, sir.

Q. Can you tell us how they did that?

A. Mr. Norris stated that he had known of people, acquaintances, that had been punished for whatever, and his example was they got 10 years, and they were out in two, with no problem.

Q. And did Ms. Gaines lead you to believe that, in any way, that she knew something about parole law?

A. Yes, sir.

.  .  .  .  .

Q. Do you recall whether or not she stated to the rest of the jurors how much time this man would probably serve on a 20–year sentence?

A. Yes, sir. She stated that if he got 20 years, ..., that he would not do more than two. That he would get out on good behavior is how she stated it to us.

Q. Did she express that to you as an opinion, or as her actually knowing that that's what would happen?

A. As she actually knew.

Q. And can you tell this Court whether or not, ..., you relied upon that information provided by Sally Gaines?

A. Yes, sir.

Q. And can you tell us, ma'am, whether or not subsequent to that discussion, and because of that discussion, you voted for a higher punishment?

A. Yes, sir.

Q. You did?

A. Yes, sir.

Q. Now let's talk about Mr. Norris. Can you tell us, ma'am, whether he, ..., related to the jury how long Mr. Buentello would have to serve on a 20–year sentence?

. . . . .

A. He stated he would be out in two years, three at the very most.

Q. Do you recall whether or not he stated that as a fact or as an opinion?

A. I feel like as an opinion.

. . . . .

A. He did continue to say, "I know this is how the criminal justice system is."

Q. ... did that influence you in arriving at a higher amount of time for actual punishment?

A. Yes, sir.

The following examination of Juror Dowd transpired:

DEFENSE COUNSEL: The people who discussed parole with you, sir, did they in any way profess to know the parole law, or know something about it?

DOWD: Yes.

Q. Now, you say Ms. Gaines indicated that he would serve how much time on a 20–year sentence?

A. Oh, probably one to five years, if that much.

Q. And did she assert that just as a bald-faced fact or as an opinion?

A. We—I took it as fact.

Q. ... In reaching a verdict of twenty years in the penitentiary, did her assertions concerning the amount of time this man would have to serve influence your decision?

A. Yes, sir. It did.

. . . . .

Q. As regards Mr. Norris, do you recall whether or not he professed to know something about the parole law?

A. He made comments directed towards, you know, good behavior time, that a person that gets, you know, anywhere from 20—20 years or so, they've got all this good time that they can gather and still get out, ..., within one to five years.

. . . . .

Q. And the comments made by Mr. Norris and Sally [Ms. Gaines] were comments upon which you relied in reaching a higher verdict?

A. Yes, sir.

The State did not present controverting affidavits or testimony from any other juror who participated in this trial. Neither juror, at any time during their testimony, indicated that the foreman or any other member of the jury attempted to stop discussion of the parole law even though the court's instructions clearly prohibited such discussions.

The Court of Appeals analyzed the testimony of jurors Montgomery and Dowd and held that since "there was no testimony that any juror professed to actually know the law concomitantly with a factual misstatement of that law," there was no abuse of discretion by the trial judge in overruling the motion for new trial. *Buentello*, supra at 920. We disagree with the appellate court's assessment of the testimony. The discussions by the jurors in this case are very similar to those presented in *Shields*, supra at 231–32.[5] The testimony

---

**5.** The dissent argues that the analogy to *Shields*   is inapposite and that jury discussion of parole

of Montgomery and Dowd indicates that jurors Norris and Gaines presented a misstatement of the law and asserted it to the others as a fact, within the context of the test set out in *Sneed*.[6] It is also apparent that at least two jurors relied upon the misstatements of Norris and Gaines, as to the application of the parole law, when they voted for a harsher punishment than they would have if not for the misstatement.[7]

Appellant's first ground for review is sustained.[8] The judgments of the trial court and the Court of Appeals are reversed and the instant cause is remanded to the trial court.

CLINTON, Judge, concurring.

The perplexing matter of jurors considering parole law again confronts the Court. While I join its opinion and judgment, this seems an appropriate occasion to broach the notion of another way out of the maze.

*Sneed v. State*, 670 S.W.2d 262 (Tex.Cr. App.1984), was decided under former article 40.03, §§ 7 and 8 in May 1984. Article 37.07, § 4, V.A.C.C.P. (hereafter § 4), mandating a parole law instruction, became effective September 1, 1985. Texas Rules of Criminal Evidence were adopted and promulgated December 18, 1985, and Texas Rules of Appellate Procedure were adopted and promulgated April 10, 1986, both effective September 1, 1986. Moreover, after *Rose v. State*, 752 S.W.2d 529 (Tex.Cr.App. 1987), determined that a parole law instruction pursuant to § 4 was violative of the

"Separation of Powers" doctrine and of "Due Course Clause" under the Constitution of the Texas, the Legislature proposed and the voters adopted an amendment to Article IV, § 11, granting the Legislature authority "to enact parole laws and laws that permit courts to inform juries about the effect of good conduct time and eligibility for parole ... on the period of incarceration served by a defendant convicted of a criminal offense." Accordingly, an amended version of § 4 became effective, but which for our purposes here made no material change in substance of former § 4.

That sequence of events as it pertains to juries receiving "other evidence" and engaging in "misconduct" would seem to have some bearing on the issue in this cause. Germane at least is whether subsequent relevant legislative and judicial provisions have any impact on the five-prong test of *Sneed v. State*, supra. To that inquiry I now turn.

That consideration by the jury of parole in assessing punishment is "an evil to be avoided" is court-made law. See *Rose v. State*, supra, at 535; *Clark v. State*, 643 S.W.2d 723, 724–725 (Tex.Cr.App.1982), and cases cited therein. And, as a comparison of *Heredia v. State*, 528 S.W.2d 847, at 850–853 (Tex.Cr.App.1975) and *Sneed v. State*, supra, clearly demonstrates, the Court has vacillated considerably in applying its own law. Whether dissatisfied with the judicially promulgated proposition, or informed by a suggestion to improve its implementation made in *Keady v. State*,

---

in that case only superficially resembles the jury discussion which transpired in the instant case. Just as in *Shields*, the jury in this case was instructed not to consider the application of parole in determining the length of appellant's sentence. A reading of the dialogue set forth in *Shields* does not reveal that anyone professed "knowledge about the working of parole law *based on some authority*" as the dissent contends is required under the third prong of the *Sneed* test. Reviewing the dialogue in *Shields* to the dialogue in this case presents no meaningful distinctions.

**6.** The dissent contends we have ignored the *third part of the Sneed* test because none of the jurors during their deliberations and discussions of parole used the magic words "profess to

know the law" when asserting their knowledge of the parole law and its applicability to appellant's sentence. However, one of the jurors in this case was quoted as saying "I know this is how the criminal justice system is." The dissent finds this insufficient to meet the third prong of the *Sneed* formulation. We find the dissent's interpretation too restrictive.

**7.** Because the fifth prong of the *Sneed* test incorporates an analysis akin to that required under Tex.R.App.P. 81(b)(2), addressing the error itself also answers the harm inquiry.

**8.** Because of the disposition of this ground for review, we need not address appellant's second contention that the jury's receipt of "other evidence" constituted reversible error.

687 S.W.2d 757 (Tex.Cr.App.1985) (dissenting opinion, at 761–762), as some have divined, see *Rose v. State,* supra at 551–552 (McCormick, J., dissenting), the Legislature took matters into its own hands and reenacted § 4 (with modifications not relevant here).

In *Rose v. State,* supra, the Court analyzed § 4 and construed the first part of its fifth paragraph to instruct the jury as to what it is permitted to consider, *viz:*

> "At this point, however, ... the jury is instructed: 'You *may consider* the existence of the parole law and good conduct time.' That is to say, when it comes to assess punishment the jury may deliberate on the content of what has been stated in the preceding four paragraphs in making a decision as to the number of years it will assess as punishment. [note omitted]." (emphasis in original).

*Id.,* at 534–535. See *Arnold v. State,* 786 S.W.2d 295, 299 (Tex.Cr.App.1990), confirming our *Rose* analysis, and also agreeing with a court of appeals that § 4 *"encourages* a jury to consider existence of parole law and good conduct time."

It may be fairly asked whether the "evil" this Court denounced and sought to regulate was, ironically enough, controverted into public policy when voters approved a constitutional amendment authorizing the Legislature to enact just such "evil" into law, and the Legislature so provided in terms identical to those we construed in *Rose.*

Manifestly the constitutionally authorized and legislatively enacted § 4 instruction supersedes the judicially constructed admonishment regarding parole, *viz:*

> "You are further instructed that in determining the punishment in this case, you are *not to discuss* among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of

the State of Texas and are *no concern of yours.*"

*Rose,* supra, at 554. It is now permissible to "consider" existence of the parole and good conduct time, that is, "to apply one's mind to something [the parole law] in order to increase one's knowledge or understanding of it or to reach a decision about it" and when functioning in a formal body to "consider and deliberate with a view to action." *Rose,* supra, at 535, n. 7. However, the instruction goes on to forbid jurors "to consider the extent to which good conduct time may be awarded" and "to consider the manner in which the parole law may be applied to this particular defendant." Thus, the argument is, essentially, that as a matter of legislatively declared public policy it is misconduct for a jury to do either, irrespective of the former *Sneed* requisites, i.e., that some juror professed to know the law and asserted as fact some misstatement of the law. *Sneed,* at 266. *Ergo,* because the latter prohibitions reflect stated public policy, they must be applicable in every case regardless of whether a § 4 instruction is actually given the jury.

Taking that way out means the bench and bar could avoid the *Sneed* maze in the future.

CAMPBELL, Judge, dissenting.

There is no question but that the meaning of Texas Rule of Criminal Evidence 606(b) is somewhat murky.[1] But in my view this case is not the proper vehicle for clarification or explication.

Neither appellant nor the State has ever disputed that juror testimony regarding juror deliberations was properly admitted at the motion for new trial hearing. Appellant does not dispute the court of appeals' analysis of the Rule 606(b) issue for the simple reason that the court of appeals held in his favor on this threshold question. Nor does the State attack the determination of the court of appeals on this issue. The parties' briefs to this Court concen-

---

1. See Goode, et al., *Guide to the Texas Rules of Evidence* 396 (1988) ("No single rule of evidence is more deceptively worded than Criminal Rule 606(b)."); *Id.,* Supp.1990 at 85 ("The deceptive manner in which Criminal Rule 606(b) is worded has confused even its authors....").

trate on the significance of the juror testimony, not its admissibility.

With appropriate exceptions, this Court should not reach out to decide questions that have not been properly framed by the parties. There is a multitude of areas of law on which this Court has yet to write. We should be reluctant to address these areas until such time as it is genuinely necessary to do so in order to resolve a real dispute. This is not such a case, at least not with regard to Rule 606(b). The State did not argue in the court of appeals that the inquiry into the jurors' deliberations was improper. For this Court to produce a definitive opinion on the import of Rule 606(b), without giving the State the opportunity to make opposing arguments, is injudicious, at best.

Having expended both time and effort in needlessly resolving a question not yet ripe for determination, the majority then spends barely a paragraph analyzing the substance of appellant's claim. In so doing, the majority breezes over the strict requirements of the *Sneed* test, and comes to an erroneous conclusion on the merits. The majority purports to use the *Sneed* test, while drawing an analogy to a similar colloquy found in *Shields v. State*, 809 S.W.2d 230 (Tex.Cr.App.1991). The analogy to *Shields* is both inapposite and incomplete.

The test outlined in *Sneed* is both straightforward and stringent: For jury discussion of parole law to constitute reversible error, it must be shown that there was (1) a misstatement of the law (2) asserted as fact (3) by one professing to know the law (4) which was relied on by other jurors (5) who for that reason changed their vote to a harsher punishment. *Sneed* at 266. Part three of the test is that part which separates the pedestrian and commonplace juror discussion of parole law from a discussion which reaches the level of harm meriting reversal. It is particularized *knowledge of parole law*, as opposed to common personal knowledge about the existence of parole or the parole system, which carries unfair weight in the jury discussion.

The difference between parts two and three of the *Sneed* test is fundamental. A simple assertion of fact about the workings of the parole system does not constitute a *profession of knowledge of the law*. If the rule were otherwise, then the statement, "I know he will only serve two years for every ten we give him," would satisfy part three of the test while the statement, "He will serve only two years for every ten we give him," would not, the only difference between these two statements being the two missing words "I know." Satisfaction of the third part of the *Sneed* test requires something more than the use of the two words "I know."

There must be profession of knowledge about the working of parole law *based on some authority*. Without reference to a compelling source, discussion of parole law constitutes nothing more than speculation or "guesstimates". *Keady v. State*, 687 S.W.2d 757, 759 (Tex.Cr.App.1985). What part three requires is particularized knowledge of the working of parole law. The "assertion of fact" requirement is separate and distinct from the requirement that a juror profess to know the law. The conclusion that any juror who makes an assertion of fact is professing to know the law runs counter to our holding in *Sneed*.

Our holding in *Sneed* has proven to be a workable solution to the problem of jury discussion of parole. Such discussions are prevalent, given the almost universal knowledge of the parole system's existence and the tendency of jurors to speculate about the effect of their verdict. The *Sneed* test differentiates between those cases where common knowledge "manifests itself in an open expression or discussion of parole possibilities" from those harmful cases where jurors are unduly influenced by assertions made by someone who claims special knowledge. *Sneed* at 265; see *Keady* at 758–759 (even though juror believed statements about parole to be factual because of the specificity of the assertions, none of the jurors professed to know the law); *Stanton v. State*, 747 S.W.2d 914, 924 (Tex.App.—Dallas 1988, pet. ref'd) (no new trial even though juror related during deliberations that he had

friend who received a long sentence and served only a short time); *Gilliam v. State*, 746 S.W.2d 323 (Tex.App.—Eastland 1988, no pet.) (discussion of parole which failed to meet *Sneed* test); *McGlothlin v. State*, 705 S.W.2d 851, 861–862 (Tex.App.—Fort Worth 1986) (no finding of jury misconduct under *Sneed* when "they said he would serve a third or a half of what the sentence was"), rev'd on other grounds, 749 S.W.2d 856 (Tex.Cr.App.1988); *Kopanski v. State*, 713 S.W.2d 188, 191 (Tex. App.—Corpus Christi 1986, no pet.) (no finding of reversible error under *Sneed* where jury discussed notion that if given 30 years, defendant would be released in 15); *Rassner v. State*, 705 S.W.2d 798, 801–802 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd) (no reversible error under *Sneed* even though several jurors showed their knowledge of parole during deliberations).

The majority opinion relies improperly on the case of *Shields v. State, supra*. The jury discussion of parole in *Shields* superficially resembles the discussion which transpired in the instant case. The resemblance does not withstand scrutiny.

In *Shields*, the jury had been charged under Tex.Code Crim.Proc. art. 37.07, § 4(b). The instruction included the information that a defendant "will not become eligible for parole until the actual time served plus any good conduct time earned equals one-third of the sentence imposed." The central issue in *Shields* was whether a juror who incorrectly repeated the formula given by the trial judge could be said to be "professing to know the law." Implicit in our reversal of the conviction was the conclusion that such a juror was in fact professing to know the law. *Shields* at 233. Indeed, the jurors in *Shields* had been given the law in their instructions from the trial judge. By misapplying the legal formula and discussing their flawed result, the *Shields* jurors were professing to know the law under part three of *Sneed*.

If the majority desires to do away with the third part of the *Sneed* formulation, then it should explain why the test is no longer valid. If the majority simply disagrees with the trial judge's evaluation of the evidence, then the majority has not understood our proper role in reviewing rulings on motions for new trial.

At a hearing on a motion for new trial, the trial judge is the finder of fact. His determination may only be reversed if there has been an abuse of discretion. *Tollett v. State*, 799 S.W.2d 256 (Tex.Cr.App. 1990); *Callins v. State*, 780 S.W.2d 176 (Tex.Cr.App.1986); *Sneed* at 266; *McCartney v. State*, 542 S.W.2d 156, 162 (Tex.Cr. App.1976); *Beck v. State*, 573 S.W.2d 786, 791 (Tex.Cr.App.1978).

A close review of the juror testimony as outlined by the majority does not reveal unequivocally that the assertions in question were made by jurors professing to know the law of parole. There was some testimony that the parole discussion was professed as knowledge; there is other testimony that it was professed as opinion. The testimony of jurors Montgomery and Dowd does not unequivocally reveal that the statements made were made by individuals *professing to know the law*. Even if this Court reaches a different conclusion from the trial judge, we should not reverse the judgment. We do not review such rulings *de novo*. Only when the decision constitutes an abuse of the trial court's discretion should we reverse. Given that in the present case the testimony concerning the jury deliberations does not clearly fulfill part three of the *Sneed* test, I see no abuse of discretion on the part of the trial court, and thus would affirm the judgment of the Court of Appeals. To the majority's failure to do so, I dissent.

McCORMICK, P.J., and WHITE and BENAVIDES, JJ., joined.