TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00540-CR







Sergio Ugalde Ortegon AKA Sergio Leal Garcia, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT


NO. 47,793, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING








 Appellant Sergio Ugalde Ortegon, also known as Sergio Leal Garcia, was convicted
in a jury trial of the offense of aggravated sexual assault. See Tex. Penal Code Ann. § 22.021
(West 1994 & Supp. 1999). The trial court assessed appellant's punishment, enhanced by prior
felony convictions, at imprisonment for 60 years. Appellant asserts that he did not receive a fair
trial and is entitled to reversal of the judgment because:  (1) the State commented on his failure
to testify; (2) the State shifted the burden of proof to him; and (3) the trial court erred in refusing
to grant a new trial based on jury misconduct. We will overrule appellant's points of error and
affirm the trial court's judgment.

 Appellant first complains that both during jury voir dire and closing argument the
State commented on appellant's failure to testify. During his jury voir dire, defense counsel
started to tell the jury some of the facts of the case. The prosecutor objected to defense counsel
going outside the scope of voir dire. The trial court instructed defense counsel to continue his voir
dire but not to go into evidentiary matters or make an opening statement. Defense counsel then
stated:  "Well, there are some things that I need to reveal about Mr. Ortegon." The prosecutor
made an imprecise objection saying:  "Let's, let's not get to testify and reveal those things through
sworn testimony. We can join up to and have a chance to speak with him." Defense counsel
objected to the prosecutor's statement on ground that it was a comment on appellant's failure to
testify. After a colloquy between the court and defense counsel, the court ruled and instructed the
jury as follows:


THE COURT: Okay. Now, as to the comment as to--[the prosecutor] has made,
I will instruct the jury to disregard it and as I have told you before there--the
Defense does not have to present any evidence whatsoever. The Defendant is
presumed to be innocent and he has the right, and if he so chooses, which he may
or may not choose to do, to present any testimony or any evidence. That is strictly
up to the Defense and you are not to consider it for any purpose.


And in the event that the Defendant chooses to not testify or to not present
evidence, you are not to in any way to hold that against him. That the Defendant
is presumed to be innocent and the State has the burden of proving his guilt beyond
a reasonable doubt. In that regard please disregard the comment of Mr. Garza in
any way and I will instruct you as to the law and I have so done.


[Defense Counsel]:  Your Honor, has the Court sustained my objection to Mr.
Garza's statement?


THE COURT:  Yes.


[Defense Counsel]:  Your Honor, at this time we would ask for a mistrial.


THE COURT:  Denied.



 Appellant urges that the trial court erred in refusing to grant the mistrial. The
prosecutor's comment was made before it was known whether appellant would testify. The trial
court's careful jury admonishment adequately protected appellant's rights. The trial court did not
err in overruling the motion for mistrial. See Decker v. State, 894 S.W.2d 475, 477 (Tex. Crim.
App. 1995); Hall v. State, 619 S.W.2d 156, 157 (Tex. Crim. App. 1980); Hill v. State, 480
S.W.2d 670, 674 (Tex. Crim. App. 1972); McCary v. State, 477 S.W.2d 624, 627 (Tex. Crim.
App. 1972).

 During the State's closing argument the record shows:


[Prosecutor]:  This case is very simple. This case is about direct evidence. And
direct evidence is when someone takes that witness stand and tells you what
happens. They tell you what happened, what they saw and what they know. And
we'll submit to you in this case, 50 percent of the people who know the facts of this
case you heard testify.


 We'll submit, ladies and gentlemen --


[Defense counsel]:  That is a comment on the failure of the Defendant to testify.
We object to that. We ask the Court to instruct the jury to disregard the statement.


 THE COURT:  The objection is overruled.



The Court of Criminal Appeals has stated:



We set out the appropriate jurisprudence in Banks v. State, 643 S.W.2d 129, 134-35 (Tex. Cr. App. 1982), cert. denied, 464 U.S. 904, 104 S. Ct. 259, 78 L. Ed.
2d 244. To violate appellant's constitutional and statutory rights, the language,
viewed from the jury's perspective, "must be manifestly intended or of such a
character that the jury would necessarily and naturally take it as a comment on the
accused's failure to testify." Id. A mere indirect or implied allusion to the
accused's failure to testify does not violate appellant's rights. A remark that calls
attention to the absence of evidence which only the defendant could supply will
result in reversal; however, if the language can reasonably be construed to refer to
appellant's failure to produce evidence other than his own testimony, the comment
is not improper.



Patrick v. State, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995); see also Wolfe v. State, 917
S.W.2d 270, 279-80 (Tex. Crim. App. 1996); Nowlin v. State, 507 S.W.2d 534, 535-37 (Tex.
Crim. App. 1974).

 Appellant contends that the prosecutor's argument called for evidence only the
appellant could have supplied. The record shows that during jury voir dire the State named ten
witnesses that might be called to testify. However, the State's only witnesses were the victim and
a counselor. Before resting, the State showed that two investigating officers were present and
available as witnesses. Although appellant did not testify, he called one witness in his defense. 
That witness was one of the investigating officers who had been identified as a potential witness
by the State during voir dire and before resting its case. The officer who took the victim's first
statement was available to testify but was not called by either the State or the defense. The
prosecutor's argument referred to "the people who know the facts of this case." We conclude that
the prosecutor's argument did not refer to any particular fact or aspect of the case that only
appellant's testimony could refute. The trial court did not err in overruling appellant's objection.
We overrule appellant's first point of error.

 In his second point of error, appellant claims that the State shifted the burden of
proof from the State to the appellant by "proffering" witnesses it had not called to testify. Prior
to resting its case in chief, the prosecutor in the presence of the jury stated: "Your Honor, also
available to testify is George or Bubba Moffatt, Esteban or Steve Ramirez." The jury was
removed from the courtroom. Defense counsel asked the trial court to hold the prosecutor in
contempt for violating a motion in limine and asked for a mistrial because proffering these
witnesses in front of the jury shifted the burden of proof. In the absence of the jury there was an
extended discussion between the parties and the trial court. (1) When the jury returned to the
courtroom, the court instructed the jury as follows:


THE COURT:  All right. Be seated, please. The record should reflect that the
jury is present as are the attorneys for the State, the Defense and the Defendant and
the interpreter.


 Ladies and gentlemen, prior to our recess the State had and the Defense
had just finished with the last witness, the second witness, Dianne Campbell. You
are to disregard any further statements that may have been made by the State after
the excusal of the second witness and disregard any other comment or statements
that you may have heard the State say regarding any other persons, and don't give
that any thought and just put it completely out of your mind. Disregard it, and
don't think about it or speculate.


Now, State, do you have other witnesses to call at this time?


[Prosecutor]:  State rests, Your Honor.


THE COURT:  Defense?


[Defense Counsel]:  Your Honor, we call Deputy Bubba Moffatt.



 Appellant called as his sole witness Officer George Moffatt to testify in his defense
and then rested. Officer Esteban Ramirez was not called as a witness by either the State or
appellant. The record shows that it was Ramirez who first made a report of the statements made
by the victim. It was appellant's contention at trial that there were conflicts between the victim's
statement made to Ramirez and that made to Moffatt. In his opening statement defense counsel
told the jury, "Now during the trial I'm going to point out inconsistencies between what the
victim told Deputy Ramirez and what she told Deputy Bubba Moffatt." In support of his
contention, appellant has cited cases he admits are concerned with jury argument; we find these
cases unpersuasive in the context of this case.

 The State's evidence proved each element of the offense and appellant has not
contested the sufficiency of the evidence. We have concluded that the State's proffer of the
witnesses did not as alleged improperly shift the burden of proof to appellant. Moreover, the trial
court's admonishment to the jury not to consider the State's proffer of the witnesses was sufficient
to cure the error, if any. Appellant's second point of error is overruled.

 In his third point of error, appellant urges that the trial court erred in refusing to
grant a motion for new trial alleging jury misconduct. The trial court heard the motion for new
trial without receiving testimony, but admitted affidavits supporting and controverting the
allegations of the motion for new trial. See Tex. R. App. P. 21.7. Appellant offered the jury
foreperson's affidavit to support his allegations. Foreperson Lambert's affidavit in pertinent part
follows:


 During the deliberations there were several things that were brought up that
I think the Court should know. Basically, I feel that the other jurors were too
biased and did not want to listen to the judge's instructions. We were split 9 to 3
and the 3 that were voting not guilty were going back and forth about whether we
would vote guilty. Finally, after the judge sent back the last instructions, the three
of us decided to let the majority rule.


 The judge asked in the Courtroom whether the verdict we brought back was
my verdict. I said I was not sure. I just said that was the way I voted in the room. 
After that the Court asked again if that was our verdict. I never said yes or no, I
just kept quiet. I felt that if we had to go back and deliberate more that the other
jurors would be mad at me, so I did not say anything. We had already decided to
let the majority rule. It should have been a hung jury.


 There were things discussed in the jury room that did not follow the judge's
instructions. One thing was that the Defendant had been in jail for a year. Then
another juror said that if we found him guilty, he would probably be out in 2 or 3
years at the most or he would just get probation. Another person said that from
their experience reading newspapers, no one gets very long. One woman said,
"It's not his whole life, it's just a few years."


 Most of us wanted the Defendant to be sent back to Mexico instead of being
sent to jail, but Mr. San Augustin felt that if we sent him back to Mexico, the
Defendant would hurt the girl's sisters in Mexico. We also talked about whether
it would be better that he be found not guilty and be sent back to Mexico to save
taxpayer money.


 A couple of the men said that if they were in his shoes they would have
testified. We said the lawyers probably told him to be quiet. A girl then said that
remaining quiet, he looked guilty. This same thing came up several times over and
over. Each time we talked about it was not long, but the total time we talked about
this was lengthy.


 We talked about it costing $30,000.00 per year to keep someone in prison. 
Another thing we talked about was that if we let him go free, he might attack
someone's mother or daughter. One guy even said that it would be better that 100
innocent people go to jail than to let one guilty man go free. We also talked about
Megan's Law, the law that says that if you are convicted of a felony sex offense a
public notice is posted to tell people whether a sex offender lives next-door. I feel
awkward, and on second thought unsure of my decision. I just don't know, please
forgive me for your time.

 To controvert appellant's motion and supporting affidavit, the State offered
affidavits of three jurors. Their affidavits follow:


JUROR RIVERA'S AFFIDAVIT



 I have read the affidavit of David Wayne Lambert as it pertains to jury
deliberations in this case.


 Each juror voted to convict the defendant, and it was not a "majority rule." 
I do not believe that we discussed how long he had been in jail, how much time he
would serve in jail, or whether or not he would be deported. I believe someone
said something about that the Defendant did not testify, but we agreed that we
could not consider that, and knew that he had a problem with not being able to
speak English. Something was said about if he would be a danger to other people,
but the discussion was that if he was guilty, that he would be a danger, but if he
was not guilty, he would not be a danger.


 The deliberations centered on the evidence, and whether or not we found
the witness believable. Each juror presented his or her point of view on this, and
we did not consider anything else in deciding if to find the defendant guilty.



JUROR CAVANA'S AFFIDAVIT



 I have read the affidavit of David Wayne Lambert as it pertains to jury
deliberations in this case.


 Each juror voted to convict the Defendant, and it was not decided to let the
majority rule. I recall that something was said about how long the Defendant had
been in jail, how long he might serve in jail, but we said that the judge would
sentence him if convicted, and that was not up to us. I do not recall any
discussions about whether or not the Defendant would be deported. I recall that
there were some comments about that the Defendant did not testify, and some
jurors stated whether or not they would have chosen to testify. Someone said that
it was a decision the Defendant had a right to make or that his attorney would help
him make, and this was not discussed as evidence in the case in deciding guilt.


 We talked about how much it costs to keep someone in prison for a year,
but it was said that was not up to us, because the Court would decide about the
sentence if he were convicted. I do not recall that anything was said about whether
or not he would attack someone else. I do not recall that anyone said it was better
to send 100 innocent to jail than to free one guilty person. I recall we talked about
Megan's Law, but we said that sort of thing was up to the Court.


 The jury deliberations were centered on the evidence in the case and each
juror had a chance to talk about what they thought about the evidence. The jurors
who changed their vote from not guilty to guilty did this after we discussed the
evidence, and I never saw anything which I would consider as pressure on these
jurors to change their vote or vote on anything other than the evidence.



JUROR HERRING'S AFFIDAVIT



 I have read the affidavit of David Wayne Lambert as it pertains to jury
deliberations in this case.


 I was one of the three jurors who initially said I was not sure if the
Defendant was guilty, and this was counted as a not guilty vote at first. After
having listened to each juror discuss his or her view of the evidence, I voted guilty. 
I did not feel pressure from anyone to change my vote, and appreciated other jurors
discussing the evidence with me. The vote to convict was unanimous, and we did
not agree to let the majority rule.


 I do not recall if anything was said about the Defendant having been in jail
for a year, how soon he might be out of jail, or how long someone serves in jail. 
I do recall that several of us said that we prayed during the trial for wisdom to do
the right thing, and that any discussion about the defendant's "whole life" was that
our decision was not about his whole life, but about this case. I recall that it was
discussed whether or not the defendant would be deported, but it was said that was
not something we had to decide. I believe Mr. Lambert said something about how
much it costs to keep someone in prison for a year. I do not recall that we
discussed whether the defendant would attack someone else, or that it was better
to send innocent to jail than let the guilty go free. I do recall someone mentioned
Megan's Law, but we never discussed it as part of the evidence or issues in the
case.


 I think it is important for people to understand that during the jury
deliberations, there were many times when several people were talking at once, and
sometimes when small groups would talk among themselves. But when we
discussed the evidence, all listened and each person had a chance to say what they
thought the evidence showed, and the evidence is what was discussed to decide the
case.


 I recall that someone said something about whether or not they would have
testified, but very little was said about this. We said that whether or not to testify
was up to the defendant and that it should not be held against him if he did not.



 The trial court admitted in evidence all four affidavits, and then allowed appellant
and the State to file trial briefs. Thereafter, the trial court refused to grant the motion for new
trial, and noted on the docket: "Court denies Motion for New Trial; letter to attorneys prepared
and court will not and did not consider affidavits admitted on 9/3/98, per T.R.E. 606(b)." It is 
apparent that the trial court did not believe the affidavits should be considered on the motion for
new trial because of Rule 606(b). That rule at the time of the court's ruling provided:


(b)  Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the
validity of a verdict or indictment, a juror may not testify as to any matter or
statement occurring during the jury's deliberations, or to the effect of anything on
any juror's mind or emotions or mental processes, as influencing any juror's assent
to or dissent from the verdict or indictment. Nor may a juror's affidavit or any
statement by a juror concerning any matter about which the juror would be
precluded from testifying be admitted in evidence for any of these purposes. 
However, a juror may testify:  (1) whether any outside influence was improperly
brought to bear upon any juror; or (2) to rebut a claim that the juror was not
qualified to serve.



Tex. R. Evid. 606(b). The trial court interpreted Rule 606(b) to preclude consideration of the
affidavits admitted in evidence. The trial court's interpretation is in agreement with that of leading
commentators. See Steven Goode, Olin Guy Wellborn III, M. Michael Sharlot, Courtroom
Handbook on Texas Evidence, Rule 606(b) (1999 ed.); Cathleen C. Herasimchuk, Texas Rules of
Evidence Handbook, Rule 606(b) (3d ed. 1998).


The 1998 version of Rule 606(b) apparently wipes out Buentello [Buentello v.
State, 826 S.W.2d 610 (Tex. Crim. App. 1992)], and all of its progeny. 
Henceforth, the same rule that has applied to offering the testimony or affidavits
of jurors in Texas civil cases will apply to criminal cases. Thus, criminal
practitioners and judges may consult and rely upon decisions rendered under
former Civil Rule 606(b). This is a dramatic change in criminal proceedings. 
Under the new rule 606(b), no longer will jurors be competent to testify that they
decided the verdict by lot, or that they decided the case based upon another juror's
incorrect statement of applicable law, or that they discussed the defendant's failure
to testify and used that failure as a basis for convicting him. The new rule is a vast
improvement over the former Criminal Rule 606(b) which threw open the door of
the jury room too widely, but it remains to be seen whether the revised Rule 606(b)
has closed shut the jury deliberation room too firmly in criminal cases.


In sum, Rule 606(b), which permits jurors in both civil and criminal cases to testify
post-verdict only to any "outside influence," preserves the finality of verdicts and
the sanctity of the jury room even more than does the analogous Federal Rule
606(b), which permits juror testimony on "extraneous prejudicial information" as
well.



Herasimchuk at 558-59. The trial court, because of Rule 606(b), could not consider the affidavits
as supporting or controverting the motion for new trial allegations of jury misconduct. Therefore
there was no evidence to support appellant's motion for new trial allegations of jury misconduct. 
The trial court did not abuse its discretion in overruling appellant's motion for new trial. 
Appellant's third point of error is overruled.


 The trial court's judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally

Affirmed

Filed: July 29, 1999

Do Not Publish




















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The trial court did not hold the prosecutor in contempt for the alleged violation of a motion
in limine. The violation of a motion in limine may entitle a party to relief, but any remedies
available with regard to such a violation are with the trial court. If its order is violated, the trial
court may apply the sanctions of contempt or take other appropriate action. Brazzell v. State, 481
S.W.2d 130, 131 (Tex. Crim. App. 1972). The trial court's refusal to grant the requested
sanctions of contempt is not reviewable on appeal.



he juror was not
qualified to serve.



Tex. R. Evid. 606(b). The trial court interpreted Rule 606(b) to preclude consideration of the
affidavits admitted in evidence. The trial court's interpretation is in agreement with that of leading
commentators. See Steven Goode, Olin Guy Wellborn III, M. Michael Sharlot, Courtroom
Handbook on Texas Evidence, Rule 606(b) (1999 ed.); Cathleen C. Herasimchuk, Texas Rules of
Evidence Handbook, Rule 606(b) (3d ed. 1998).


The 1998 version of Rule 606(b) apparently wipes out Buentello [Buentello v.
State, 826 S.W.2d 610 (Tex. Crim. App. 1992)], and all of its progeny. 
Henceforth, the same rule that has applied to offering the testimony or affidavits
of jurors in Texas civil cases will apply to criminal cases. Thus, criminal
practitioners and judges may consult and rely upon decisions rendered under
former Civil Rule 606(b). This is a dramatic change in criminal proceedings. 
Under the new rule 606(b), no longer will jurors be competent to testify that they
decided the verdict by lot, or that they decided the case based upon another juror's
incorrect statement of applicable law, or that they discussed the defendant's failure
to testify and used that failure as a basis for convicting him. The new rule is a vast
improvement over the former Criminal Rule 606(b) which threw open the door of
the jury room too widely, but it remains to be seen whether the revised Rule 606(b)
has closed shut the jury deliberation room too firmly in criminal cases.


In sum, Rule 606(b), which permits jurors in both civil and criminal cases to testify
post-verdict only to any "outside influence," preserves the finality of verdicts and
the sanctity of the jury room even more than does the analogous Federal Rule
606(b), which permits juror testimony on "extraneous prejudicial information" as
well.



Herasimchuk at 558-59. The trial court, because of Rule 606(b), could not consider the affidavits
as supporting or controverting the motion for new trial allegations of jury misconduct. Therefore
there was no evidence to support appellant's motion for new trial allegations of jury misconduct. 
The trial court did not abuse its discretion in overruling appellant's motion for new trial. 
Appellant's third point of error is overruled.


 The trial court's judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Jones, B. A. Smith and Dally

Affirmed

Filed: July 29, 1999

Do Not Publish




















* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).